IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

JOHN F. GREEN,

                          Plaintiff,

        v.                                      Civil Action No.
                                                9:07-CV-01035 (LEK/DEP)

L. LEUBNER, Sgt., Auburn
Correctional Facility, *et al.,*

                          Defendants.

─────────────────────────────────────

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

JOHN F. GREEN, *Pro Se*
1008 East Adam Street
Temple, TX 76501

FOR DEFENDANTS:

ANDREW M. CUOMO                   MICHAEL McCARTIN, ESQ.
Attorney General of the State     Assistant Attorney General
  of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff John F. Green, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 alleging deprivation of his civil rights.[1]  In his complaint the plaintiff asserts a single cause of action, alleging the failure of prison workers to protect him from an assault by another inmate wielding a bent metal can lid.  As relief, the plaintiff seeks compensatory damages and injunctive relief.

Currently pending before the court is a motion by the defendants seeking summary judgment dismissing plaintiff's complaint.  In their motion, the defendants argue that 1) defendant Leubner, a supervising sergeant, was not personally involved in the circumstances surrounding the assault, and therefore cannot be held liable, 2) the undisputed material facts show that the plaintiff cannot establish a viable failure to protect claim, and 3) in any event, they are entitled to qualified immunity from suit.  Having carefully considered the record now before the court, I recommend that the defendants' motion be granted.

---

[1]      Based upon his filing of a change of address notice, it appears that the plaintiff was released from prison on or about February 2, 2009.  Dkt. No. 24.

2

I.     BACKGROUND[2]

At the times relevant to his claims, the plaintiff was an inmate

entrusted to the care and custody of the New York State Department of

Correctional Services ("DOCS") and was incarcerated at the Auburn

Correctional Facility ("Auburn"), located in Auburn, New York.   Complaint

(Dkt. No. 1) ¶ 6.   The  events giving rise to the plaintiff's claim occurred

on October 8, 2004, while he was working in the mess hall at Auburn with

several other inmates.  *Id.*  After lunch, the inmate workers were ordered

into the rear break room behind the kitchen, where a verbal dispute arose

as to what program to watch on the television.  *Id.*  The plaintiff, knowing

that a disruption could lead to television privileges being revoked,

suggested that the inmates present vote on the matter.  *Id.* Defendant

Rick Gilfus, a corrections officer stationed in the break room at the time of

the dispute, warned the inmates to quiet down and advised that if they

persisted in their argument the television would be turned off.  Defendants'

Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶ 11.  Thereafter, the

---

[2]       In light of the procedural posture of the case the following recitation is
derived from the record now before the court, with all inferences drawn, and
ambiguities resolved, in favor of the plaintiff.  *See Burtnieks v. City of New York,* 716
F.3d 982, 985-86 (2d Cir. 1983) (citations omitted).  Most of the relevant facts
underlying the plaintiff's claim, however, are undisputed.  *See generally* Plaintiff's
Response to Defendants' Local Rule 7.1 (a)(3) Statement (Dkt. No. 23) pp. 6-10.

disagreement was resolved by vote, without any physical altercation.

Apparently dissatisfied with the outcome of the polling, inmate Michael Vaughn later stood in front of the plaintiff "scowling" and "fiddling" with something in his pocket as if he wanted the plaintiff to assume that he was in possession of a weapon.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶¶ 6-7.  Although the plaintiff believed that Vaughn had a weapon in his pocket, he did not report his suspicion to Corrections Officer Gilfus.  *Id.* ¶ 8.  Several minutes later, the plaintiff noticed that Vaughn had disappeared from the break room, although he did not know where Vaughn had gone.  *Id.* ¶¶ 14,16.

Approximately ten minutes later Vaughn reappeared, unexpectedly grabbing the plaintiff from behind and slashing him across his head several times with a bent aluminum can lid.  *Id.* ¶ 19.  Within seconds, Green stood up to defend himself.  Transcript of Plaintiff's Deposition ("Tr.") (Dkt. No. 21-4) pp. 53-54.  Hearing the commotion, defendant Gilfus stood up at about the same time as the plaintiff rose, and observed Vaughn making a "slashing" motion towards the plaintiff.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13  ¶¶ 22-23); Gilfus Declaration ("Decl.") (Dkt. No. 21-6) ¶ 4.  Gilfus immediately rang the "fight

bell" to summon backup.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶ 24; Gilfus Decl.  (Dkt. No. 21-6) ¶ 4.  After the plaintiff stood Vaughn took one last swing, nicking the plaintiff one final time on the arm.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13)  ¶ 26.

The altercation continued, with the plaintiff and Vaughn "dancing around" each other for about ninety seconds as a crowd of approximately twenty-five inmates watched, after which the plaintiff ran into the bathroom to wash the blood from his face.  *Id.* ¶¶ 30-32; Tr. (Dkt. No. 21-4) pp. 24, 58-60.  Vaughn followed the plaintiff and attempted to get into the bathroom.  Tr. (Dkt. No. 21-4) p. 24.  The plaintiff took up a mop to use as a defensive weapon and told Vaughn to get away.  *Id.*  Vaughn then backed out of the bathroom and fled.  *Id*. pp. 24, 55, 62; Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶ 34; Complaint (Dkt. No. 1) ¶ 6.

Brandishing the mop, Green chased Vaughn toward the kitchen area; as they proceeded to the kitchen both inmates ran into Corrections Officers Craig Harvey and Gary Vroman, who had responded to defendant Gilfus' call for backup.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt.

No. 21-13) ¶ 35; Tr. (Dkt. No. 21-4) p. 25.  Defendant Vroman subdued

Vaughn, using a "bear hug."  Tr. (Dkt No. 21-4) pp. 26, 28.  While Vaughn

attempted to dispose of the weapon, defendant Vroman was able to

confiscate and secure the can lid for use as evidence.  *Id.* at p. 26;

Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶ 39.

Defendant Leroy Leubner, who at the time was responsible for

supervising the main yard and had no direct responsibility for the kitchen

area, responded to the call and arrived after the other corrections officers

had taken control of the situation.  Leubner Decl. (Dkt. 21-8) ¶ 4.  The

plaintiff was taken to the infirmary for medical treatment, where eighteen

"steri-strips" were applied to close his wounds.  Leubner Decl. (Dkt. No.

21-8) ¶ 5; *see also* Complaint (Dkt. No. 1) Attachment at pp. 5-6.  Both

inmates were interviewed regarding the incident, and Vaughn was

escorted to one of the facility's special housing units ("SHU") without

further incident.[3,4] Complaint (Dkt. No. 1) Attachment at pp. 1-4.

---

[3]    Auburn consists in part of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

[4]    A search of inmate Vaughn's cell following the incident yielded a six inch long plexiglass shank which was confiscated by prison authorities.  Complaint (Dkt. No. 1) Attachment at pp. 2, 12.  As a result of the altercation inmate Vaughn was subjected to a disciplinary hearing, and after having been found guilty of violating

II.   PROCEDURAL HISTORY

The plaintiff commenced this action on October 1, 2007.  Dkt. No. 1.

Named as defendants in the plaintiff's complaint are L. Leubner, Craig

Harvey, L. Vroman, and Rick Gilfus, all corrections workers at Auburn, as

well as fellow inmate Michael Vaughn.[5]  The plaintiff's sole claim is that

the defendants violated his constitutional rights by negligently performing

their duties when they failed to protect him from the assault by Vaughn.[6]

Complaint (Dkt. No. 1) ¶ 7-9.

Following the close of discovery, the defendants moved for summary

judgment seeking dismissal of the plaintiff's complaint on the merits.[7]  Dkt.

No. 20-11.  That motion, which the plaintiff has since opposed (Dkt. No.

23), has been referred to me for the issuance of a report and

───────────────────

prison rules was sentenced to serve twenty-four months in disciplinary SHU
confinement.  Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 21-13) ¶ 40.

[5]      Vaughn was dismissed as a defendant because he did not act under
color of state law, as required in order to be exposed to liability under section 1983.
Dkt. No. 4.

[6]      The plaintiff has a claim pending in the New York Court of Claims arising
of the same incident, presumably seeking damages against the State of New York for
negligence.  Complaint (Dkt. No. 1) ¶ 5.

[7]      The defendants also argue that the corrections officers are entitled to
qualified immunity. In light of my recommendation on the merits, however, I find no
need to conduct a qualified immunity analysis.

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern
District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Summary Judgment Standard

   Summary judgment motions are governed by Rule 56 of the Federal
Rules of Civil Procedure. Under that provision, the entry of summary
judgment is warranted when "the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as
to any material fact and that the movant is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,
322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of
Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.
2004). A fact is "material," for purposes of this inquiry, if it "might affect
the outcome of the suit under the governing law." *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d
549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in
dispute "if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.

A moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is appropriate only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

      B.    <u>Defendant Leubner's Personal Involvement</u>

In their motion the defendants seek dismissal of the plaintiff's claims against defendant Leubner, arguing that he was not personally involved in the incident leading to the plaintiff's injuries.  Defendants' Motion for Summary Judgment (Dkt. No. 21-11) p. 7.  The basis for the plaintiff's contention that defendant Leubner should not be dismissed from the suit for lack of personal involvement is not readily apparent from his opposition papers.  During his deposition the plaintiff testified that he named Leubner as a defendant in this action based upon his belief that Leubner was the supervisor in charge of the kitchen area.  Tr. (Dkt. No. 21-4) pp. 85-86.  The record before the court, however, fails to support that assertion.  *See* Leubner Decl. (Dkt. No. 21-8) ¶ 4.

It should be noted, moreover, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Culpability on the part of a supervisory official for a civil rights violation can be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds, sub nom. Ashcroft v. Iqbal*, ___ U.S. ___ 129 S.Ct. 1937 (2009); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Leubner states that on October 8, 2004 he responded to the a problem in the back area of kitchen from the main yard, which he was responsible for supervising at the time. Leubner Decl. (Dkt. No. 21-8) ¶ 4.

By the time he arrived at the scene all violence had stopped, and he found the plaintiff bleeding from the right side of his head and being pat frisked by defendant Harvey.  *Id.* ¶¶ 4, 6.  During his deposition, the plaintiff testified regarding his basis for suit against Leubner, stating, "the only reason why Officer Leubner is there is because he had–in his individual capacity I'm talking about he had really nothing that I could say that he actually did personally, but in his official capacity he had supervision over the officers of the kitchen, you know. That's all. . . . [I]t's just like chain of command."  Tr. (Dkt. No. 21-4) pp. 85-86.  It should be noted, however, that vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

Because *respondeat superior* alone cannot provide a proper basis for finding liability under section 1983  *Richardson*, 347 F.3d at 435;

*Wright*, 21 F.3d at 501, there is no basis for the plaintiff's claim against Leubner.  There is no evidence in the record suggesting that Leubner was at all involved in the circumstances preceding or surrounding the attack on the plaintiff.  The plaintiff does not allege that Leubner was in the kitchen or break area at any time before the incident occurred.  There are no allegations that Leubner had any reason to know of the verbal disagreement, let alone that Vaughn would attack the plaintiff.  Additionally, the plaintiff has not alleged that Leubner failed to respond in an appropriate manner.  In view of the foregoing, no reasonable factfinder could discern a basis for finding Leubner liable.  Accordingly, I recommend that the portion of the defendants' motion seeking dismissal of the plaintiff's claims against defendant Leubner be granted.

      C.     The Merits of Plaintiff's Failure to Protect Claim

      In their motion the defendants assert that Green cannot support a failure to protect claim, based upon his inability to show that the defendant corrections officers exhibited the requisite deliberate indifference toward his circumstances, as distinct from being negligent in the performance of their duties.  That the plaintiff's claim is firmly rooted in negligence rings clear from his complaint and motion opposition papers, both of which

characterize the defendants' actions as such.  As but one example, in his motion opposition the plaintiff himself characterizes the defendants' alleged misconduct as negligence, averring that the "failing to act on the part of the state, for failing to act on the possibility of an accident, presented a dangerous condition which the state had notice."  Plaintiff's Memorandum (Dkt. No. 23) p. 12.  The plaintiff admittedly does not fault defendant Gilfus for his response to the attack, or for failing to immediately intervene before the arrival of backup.  Tr. (Dkt. No. 21-4) p. 97.  Rather, the essence of the plaintiff's complaint is that Vaughn never should have been permitted to leave the break room, and the defendants are therefore responsible for his actions upon returning to the area.  *Id*. p. 32.

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty carries with it an obligation to protect prisoners from harm caused by fellow inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833-34, 114 S. Ct. 1970, 1976-77  (1994) (citations omitted); *see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (citing, *inter alia*, *Farmer*).  "[A]n isolated omission to act . . . by a prison guard

does not support a claim under § 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (per curiam) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)). When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight. *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp. 2d at 124-25; *Coronado v. LeFevre*, 886 F. Supp. 220, 224 (N.D.N.Y. 1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

       1.   <u>Objective Test</u>

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities." *Dawes v. Walker*, 239 F.3d 489, 493-94 (2nd Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992

(2002).  Specifically, as noted above, in situations where an inmate's

safety is at issue, that person must demonstrate that he or she was

incarcerated under conditions posing a substantial risk of serious harm.

*Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d

at 493; *Matthews*, 36 F. Supp. 2d at 124-25.  The defendants concede

that the plaintiff's wounds, comprised of several lacerations on the face

which were treated with eighteen "steri strips," were sufficiently serious,

and do not seek dismissal on this basis.  Defendants' Motion for Summary

Judgment (Dkt. No. 21-11) p. 9 (citing *King v. Dept. of Corr.*, No. 95 Civ.

3057, 1998 U.S. Dist. LEXIS 1825, at *16-17 (S.D.N.Y. Feb. 18, 1998)

(Koeltl, J.)). *See* Complaint (Dkt. No. 1) Ex. p. 5-6.  The point of

contention is whether the plaintiff can satisfy the subjective prong of the

prevailing test.

      2.   <u>Subjective Test</u>

     To demonstrate that the defendants were deliberately indifferent to

his or her plight, a plaintiff must show that prison officials actually knew of,

but disregarded, an excessive risk to his or her health and safety – "the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979;

*Matthews*, 36 F. Supp. 2d at 124-25.  "Deliberate indifference requires

more than negligence, but less than conduct undertaken for the very

purpose of causing harm". *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.

1994), *cert. denied*, 115 S.Ct. 1108 (1995) (citing *Farmer*, 511 U.S. at

835, 114 S.Ct. at 1978).  "In the failure-to-protect context, a prison official

acts with deliberate indifference and thus has sufficient culpable intent if

he has knowledge that an inmate faces a risk of serious harm and he

disregards that risk by failing to take reasonable measures to abate the

harm." *Blaylock v. Borden*, 547 F.Supp.2d 305, 310 (S.D.N.Y. 2008)

(internal quotations and citations omitted).

### a.    Defendants Harvey and Vroman

According to the plaintiff, defendant Harvey customarily sits outside

the kitchen area, while defendant Vroman is usually stationed inside the

kitchen.  Tr. (Dkt. No. 21-4) pp. 33-34.  The plaintiff's theory appears to be

that had defendants Harvey and Vroman been adequately performing their

duties, they would have prevented Vaughn from entering the kitchen area

and obtaining a can lid for use as a weapon.

Preliminarily, I again note that to the extent the plaintiff's claim

implicates mere negligence, it is insufficient to state an actionable claim under section 1983.[8]  *Soria v. Girdich*, 9:04-CV-727,  2007 U.S. Dist. LEXIS 96122, at * 17 (N.D.N.Y. Dec. 6, 2007) (DiBianco, M.J.) (citing cases).  Moreover, despite the plaintiff's conclusory assertions, there is no evidence in the record that would support a finding that defendants Harvey and Vroman knew of a substantial risk of harm to the plaintiff.

Neither Harvey nor Vroman actually saw Vaughn cut the plaintiff, since they were both on duty in the kitchen area outside of the break room. Harvey Decl. (Dkt. No. 21-7) ¶ 4; Vroman Decl. (Dkt. No. 21-9) ¶ 4. Both Harvey and Vroman declare that they did not see Vaughn in the kitchen area at any point prior to the attack.  Harvey Decl. (Dkt. No. 21-7) ¶ 5; Vroman Decl. (Dkt. No. 21-9) ¶ 6.  In the face of this evidence, the plaintiff can only speculate that Vaughn returned to the kitchen.  He admits that he does not know for sure where Vaughn went, or if he left the break room at all.  Tr. (Dkt. No. 21-4) pp. 70-71, 74-75.  In fact, the plaintiff

---

[8]      In opposition to the defendants' motion the plaintiff alleges that the defendants violated various policies, rules and regulations of the DOCS in allowing Vaughn to enter the kitchen area and failing to secure the metal can tops.  Plaintiff's Memorandum (Dkt. No. 23) pp. 13, 15.  Even assuming these allegations are true, however, it is well established that "[a] violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."  *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases).

is not even certain that Vaughn did not have the metal can lid concealed on his person at the time of the initial verbal dispute. Tr. (Dkt. No. 21-4) pp. 39, 73.

Plaintiff does not deny that Harvey and Vroman promptly responded to the "fight bell" initiated by Gilfus.  Harvey Decl. (Dkt. No. 21-7) ¶ 4; Vroman Decl. (Dkt. No. 21-9) ¶ 4.   Vroman arrived at the scene as quickly as he could, ordered both inmates to stop fighting, and apprehended Vaughn, along the way taking steps to secure the bent can lid.  Vroman Decl. (Dkt. No. 21-9) ¶¶ 4, 7.  Defendant Harvey arrived at the scene at about the same time and similarly ordered both inmates to stop fighting, and the inmates complied.  Harvey Decl. (Dkt. No. 21-7) ¶ 4, 6.  The first time either of those defendants observed the two inmates was when the plaintiff was chasing Vaughn into the kitchen with the mop, after he had been cut.

The undisputed evidence thus demonstrates that immediately upon becoming aware that there was a fight, both Harvey and Vroman responded and took appropriate measures to secure both inmates as well as the weapon being used against the plaintiff.  There is nothing in the record, short of sheer surmise, to support plaintiff's assertion that after the

19

verbal dispute over the television Vaughn entered the kitchen from the break room and retrieved the weapon.  Moreover, the record lacks any evidence from which a reasonable factfinder could conclude that either Harvey or Vroman had any reason to know, in advance of the attack, that the plaintiff was exposed to a substantial risk of harm.  Those officers were not present at the time of the verbal confrontation, and there is no suggestion of any prior history between the plaintiff and Vaughn that might have led to cause for concern.  In light of the undisputed facts, I find that the record before the court cannot sustain a finding of deliberate indifference on the part of defendants Harvey and Vroman and therefore recommend that the defendants' motion for summary judgment seeking dismissal of the plaintiff's claims against them be granted.

### b.    Defendant Gilfus

Because Gilfus was on duty in the kitchen break room, or recreation area, and was present when the dispute over the television first arose, the plaintiff argues that defendant Gilfus should have taken preventative measures before the attack occurred.  Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. No. 23) p. 16.  The plaintiff and the defendants agree that Vaughn's attack on the plaintiff was unexpected

and lasted all of "three seconds."  There is no credible evidence in the

record to support the plaintiff's contention that Gilfus should have

anticipated the attack.  To the contrary, the plaintiff's assertion that Gilfus

should have been aware of the threat of harm before the attack occurred

is undermined by his own statements, to the effect that before the attack

he did not tell Gilfus that he thought Vaughn might have a weapon in his

pocket because he did not want to be labeled a "rat" and since at the time

he did not feel he was in danger.  Plaintiff's Memorandum of Law (Dkt. No.

23) p. 6.

The undisputed facts in the record reveal that Vaughn inflicted the

injuries upon the plaintiff unexpectedly, rapidly, and within a such a short

span of time that there was nothing Gilfus could reasonably have done to

intervene before the attack was consummated.  Tr. (Dkt. No. 21-4) p. 53.

Gilfus did not see Vaughn leave the recreation room to obtain the weapon,

and does not know how or when it came into his possession.  Gilfus Decl.

(Dkt. No. 21-6) ¶ 6.  Gilfus stood up, almost simultaneously with the

plaintiff, as soon as he became cognizant of a commotion and

immediately called for backup.  Tr. (Dkt. No. 21-4) p. 23; Gilfus Decl. (Dkt.

No. 21-6) ¶ 4.  At that point, Vaughn was only able to slash at the plaintiff

once more, merely nicking his arm.  Tr. (Dkt. No. 21-4) p. 95-96.

Following his training, Gilfus did not attempt to intervene in the altercation

before backup arrived (Gilfus Decl. [Dkt. No. 21-6] ¶ 50, and plaintiff does

not take issue with Gilfus' response to the attack in this regard.  Tr. (21-4)

p. 93.

The evidence shows that once Gilfus became aware of the situation

he acted responsibly, taking appropriate measures to end the attack.  On

the record now before the court, I thus conclude that the plaintiff has failed

as a matter of law to establish that Gilfus acted with deliberate

indifference.  See Blaylock, 547 F. Supp. 2d at 312 (holding that

corrections officer acted reasonably by ordering fighting prisoners to stop

and waiting for backup rather than getting physically involved); Soria, 2007

U.S. Dist. LEXIS 96122, at * 18 (finding that an inmate plaintiff alleging

that defendants negligently disregarded duty by allowing another inmate to

enter the mess hall with a weapon failed to state a claim for deliberate

indifference); King v. Dep't of Corrections, 95 Civ. 3057, 1998 U.S. Dist.

LEXIS 1825, at * 19 (S.D.N.Y Feb. 16, 1998) (plaintiff failed to prove

deliberate indifference by failing to offer evidence that defendant

orchestrated or knew in advance that an attack on plaintiff was imminent).

Accordingly, I recommend that all claims against Gilfus be dismissed.

IV.    <u>SUMMARY AND CONCLUSION</u>

The plaintiff contends that the defendants, corrections workers at the prison in which he was housed at the relevant times, should have taken measures to protect him from being attacked with a can lid by another inmate.  The undisputed facts, however, fail to disclose any basis upon which the defendants had reason to be aware of a danger to Green, or otherwise acted with the deliberate indifference necessary to substantiate the plaintiff's claims.  Additionally, as the plaintiff himself has stated, defendant Leubner is only a party to this suit by virtue of his supervisory authority, which has long been held to be an inadequate ground to support liability in a case such as this.

Based on the foregoing it is hereby respectfully

RECOMMENDED that the defendants' motion for summary judgment (Dkt. No. 21) be GRANTED and that the plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P.  6(a), 6(d), and 72; *Roldan v. Racette,* 984 F.2d

85 (2d Cir. 1993). It is hereby ORDERED that the clerk of the court serve

a copy of this Report and Recommendation upon the parties in

accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 1, 2009
            Syracuse, NY